IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DIEGO VENEGAS, et al.,

    Plaintiffs,

    v.

WRIGHT STATE UNIVERSITY, et al.,

    Defendants.

:

:        Case No. 3:16-cv-377

        JUDGE WALTER H. RICE

:

---

DECISION AND ENTRY SUSTAINING MOTION TO DISMISS OF DEFENDANTS WRIGHT STATE UNIVERSITY AND CHRIS TAYLOR (DOC #5) AS TO CLAIMS ONE THROUGH FOUR FOR LACK OF SUBJECT MATTER JURISDICTION, SUSTAINING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (DOC. #5) AS TO CLAIM FIVE, AND OVERRULING DEFENDANTS' MOTION AS TO CLAIM SIX, SUBJECT TO RENEWAL IF PLAINTIFFS CHOOSE TO FILE AN AMENDED COMPLAINT; MOTION FOR LEAVE TO FILE AMENDED COMPLAINT OF PLAINTIFFS DIEGO VENEGAS AND MARC SODINI (DOC #7) IS OVERRULED, AS PLAINTIFFS HAVE NOT SET FORTH CLAIMS THAT WOULD SURVIVE A MOTION TO DISMISS; PLAINTIFFS' CLAIMS TWO THROUGH FIVE ARE DISMISSED WITH PREJUDICE, AND JUDGMENT SHALL ULTIMATELY ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFFS ON THOSE CLAIMS; PLAINTIFFS MAY FILE AN AMENDED COMPLAINT AS TO CLAIM ONE WITHIN TWENTY-ONE DAYS OF THIS ENTRY, SUBJECT TO THE CONDITIONS SET FORTH HEREIN AND THE STRICTURES OF RULE 11; IF PLAINTIFFS FAIL TO FILE A VIABLE AMENDED CLAIM ONE, THEN THE COURT WILL DISMISS CLAIM SIX WITHOUT PREJUDICE TO REFILING IN A STATE COURT OF COMPETENT JURISDICTION

---

Plaintiffs Diego Venegas ("Venegas") and Marc Sodini ("Sodini") (collectively "Plaintiffs"), former members of the Wright State University ("WSU") Men's Varsity Tennis Team ("Team"), allege WSU and Chris Taylor ("Taylor"), in his official capacity as the Director of WSU's Office of Community Standards and Student Conduct

(collectively "Defendants"), improperly removed them from the Team and terminated their enrollment at WSU. Plaintiffs claim that Defendants violated their rights under the First and Fourteenth Amendments to the United States Constitution (claims brought under 42 U.S.C. §1983); violated their rights under Title IX of the United States Education Amendments of 1972, 20 U.S.C. § 1681 *et. seq.* ("Title IX"); and breached their contracts with Plaintiffs. Doc. #1. Before the Court are Defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), Doc. #5, and Plaintiffs' Motion for Leave to Amend the Complaint ("Motion for Leave"). Doc. #7. For the reasons set forth below, Defendant's Motion to Dismiss is SUSTAINED IN PART AND OVERRULED IN PART, and Plaintiffs' Motion for Leave is OVERRULED in its present form.

## I.     RELEVANT FACTUAL BACKGROUND[1]

### A.     Facts related to Venegas

Venegas, a Colombian national, was a WSU student and a member of the Team from 2014 through 2016. Doc. #1, ¶¶ 10-12, PAGEID #3. In January 2016, Venegas was informed that his teammate, Tyler Smith ("Smith"), had filed a formal complaint against him for violating the WSU Student Code of Conduct ("Code") by "poking" him in the rectum. Doc. #1, ¶¶ 16-17, PAGEID #3-4. In February 2016, a second teammate, Grant Esposito ("Esposito"), alleged that he, too, was poked by Venegas. *Id.*, ¶ 18, PAGEID #4. During the investigation, Taylor "specifically and repeatedly discouraged" Venegas from obtaining counsel. *Id.*, ¶ 19.

---

[1] As Defendants' Motion to Dismiss is brought under Rule 12(b)(6), the Court, for the purposes of the motion, must treat Plaintiff's well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

On February 10, 2016, WSU's Gender-Based Harassment and Violence Panel ("GBHVP") conducted a series of hearings regarding alleged transgressions by Team members, including Venegas. Doc. #1, ¶¶ 20-21, PAGEID #4. Pursuant to Sections B7-3 and B2-1 of the Code, the GBHVP found Venegas responsible for deliberate touching of another's sexual parts without consent and hazing, and he was expelled from WSU. Id. ¶¶ 25-26, PAGEID #5.

### B. Facts related to Sodini

Sodini was a WSU student and Team member from 2012 through 2016. Doc. #1, ¶¶ 29-30, PAGEID #6. In January 2016, Smith and Esposito filed a formal complaint against Sodini for the following alleged violations of the Code: (1) "Deliberate touching of another's sexual parts without consent;" (2) a "Bias related incident;" (3) "Verbal harassment;" and (4) "Hazing or similar act." Doc. #1, ¶¶ 36, 38, PAGEID #7, 8.

On February 10, 2016, Sodini also had a hearing before the GBHVP, at which he was found responsible for all four Code violations. Subsequently, Sodini was removed from the Team and expelled from WSU. Doc. #1, ¶ 49, PAGEID #10.

## II. CLAIMS IN LAWSUIT

### A. Claim One—Fourteenth Amendment Due Process

Plaintiffs claim that they "have a protected liberty interest in pursuing their education at WSU," Doc. #1, ¶ 56, PAGEID #11, and that "Venegas, as an international student, has a protected property interest in his residency status through his student visa, housing, and scholarship[.]" Id., PAGEID #57. Plaintiffs claim that Defendants

3

removed them from the Team and expelled them from WSU without notice and opportunities to be heard that were commensurate with their liberty and property interests. *Id.*, ¶¶ 58, 80 PAGEID #12, 14. Plaintiffs allege that these above-described actions violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* ¶ 80, PAGEID #14.

## B.  Claim Two—First Amendment

Plaintiffs allege that Defendants prohibited them from speaking with fellow students, including other Team members also under investigation or with current and former employees of WSU, prior to their hearings. Doc. #1, ¶ 83, PAGEID #15. Also, Plaintiffs claim that the Defendants restricted their rights to "freely speak with legal counsel or advisor(s) of their choosing, whose advise [*sic*] was critical to Plaintiffs' ability to defend" themselves. *Id.*, ¶ 84. Plaintiffs allege that these actions violated their free speech and association rights guaranteed by the First Amendment. *Id.*, ¶ 85.

## C.  Claim Three—Fourteenth Amendment Equal Protection—Venegas

Venegas alleges that Defendants imposed higher penalties against him in comparison to other accused Team members due to his ethnicity, Hispanic, his country of origin, Colombia, and his status as a non-permanent resident. Doc. #1, ¶¶ 92-93, PAGEID #17. Venegas alleges that this disparate treatment violated the Equal Protection Clause of the Fourteenth Amendment. *Id.*, ¶ 94.

**D.    Claim Four—Fourteenth Amendment Equal Protection—Venegas and Sodini**

Plaintiffs allege that Defendants failed to enforce the Code against all parties involved in the alleged incident.  Doc. #1, ¶ 100, PAGEID #19.  Specifically, Plaintiffs claim that Defendants failed to investigate their claims that Smith and Esposito themselves engaged in sexual assault and racial harassment against them, and that Defendants failed to "investigate, prosecute, or discipline" either Smith or Esposito for these acts.  *Id.*, ¶ 99-100, PAGEID #18-19.  Plaintiffs allege that this violated their equal protection rights under the Fourteenth Amendment.  *Id.*, ¶ 101, PAGEID #19.


**E.    Claim Five—Title IX**

Plaintiffs allege that Defendants' failure to investigate their accusations that they were victims of sexual misconduct  constituted "impermissible [sex-based] bias" in violation of Title IX, which "bars the imposition of university discipline where [sex] is a motivating factor in the decision to discipline."  Doc. #1, ¶¶ 107, 110, PAGEID #20.


**F.    Claim Six—Breach of Contract**

Plaintiffs allege that the Code constituted a contract between Plaintiffs and the Defendants, arising out of each Plaintiff's enrollment at WSU, Doc. #1, ¶¶ 114, 142, PAGEID #21, 25, and that Defendants' failure to comply with the rules and obligations contained in and arising out of the Code constituted breaches of those contracts.  *Id.*, ¶ 145, PAGEID #25.  Specifically, Plaintiffs allege that Defendants breached the Code when they: (1) failed to provide them with the same opportunity as was afforded Smith and Esposito to present their own allegations of misconduct; (2) discouraged them from

consulting with counsel regarding their alleged offenses; (3) failed to address their allegations against the complainants for misconduct; (4) prohibited them from attending other hearings or from cross-examining Smith and Esposito; and (5) improperly allowed the GBHVP to hear and adjudicate their charges for hazing and inappropriate touching. Doc. #1, ¶¶ 118, 125, 127, 139-140, PAGEID #22-25.

### G.    Motion for Leave

In their memorandum in opposition to Defendant's Motion to Dismiss, Plaintiffs request that this Court grant them leave to amend their 42 U.S.C. § 1983 claims to include allegations against Defendant Chris Taylor in both his official and individual capacities, and a prayer for declaratory and injunctive relief. Doc. #7, PAGEID #70 (citing Doc. #7-1). In addition, Plaintiffs seek leave to include additional allegations to all of their claims. *Id.*, PAGEID #72-73.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

"The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (citing Fed. R. Civ. P. 12(b)(1). "[T]he party invoking federal jurisdiction has the burden to prove that [subject matter] jurisdiction [exists]." *Global Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015). If the Court determines that it lacks jurisdiction over certain claims, then it must dismiss those claims. *See Ammex, Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir. 2003) (quoting *Riggs v. Island Creek Coal Co.*,

542 F.2d 339, 343 (6th Cir. 1976)) ("parties cannot waive the requirement of subject matter jurisdiction.").

Defendants have raised a "facial attack on the subject matter jurisdiction alleged in the complaint[, which] merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under [Rule] 12(b)(6) motions to dismiss." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (emphasis removed).


### B.    Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Rule 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the opposing party has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-

pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff."
*Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Legal conclusions "must be supported by well-pleaded factual allegations . . . [that] plausibly give rise to an entitlement of relief." *Id.* at 679. "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

### C.    Leave to Amend Standard

Rule 15(a)(2) directs courts to give leave to amend freely "when justice so requires." Nonetheless, a court need not grant leave to amend if doing so would be futile. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citation omitted).

## IV.    ANALYSIS

### A.    Claims One through Four—Original Complaint

Defendants argue that Plaintiffs' First and Fourteenth Amendment claims fail as matters of law because neither WSU nor Taylor, in his officially capacity, is a "person" under 42 U.S.C. § 1983.  Doc #5, PAGEID #56.  In addition, Defendants argue that the Eleventh Amendment prohibits federal courts from awarding money damages to Plaintiffs against states and state agencies under 42 U.S.C. § 1983. *Id.* As Plaintiffs, in their prayer for relief, seek only money damages, Defendants argue that Plaintiffs' section 1983 claims, as pled in the initial Complaint, are not viable. *Id.*, PAGEID #57.

Section 1983 claims for money damages may only be brought against a "person," as that term is defined under 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 60, 109 S.Ct. 2312,105 L.Ed.2d 93 (1989).  "[N]either a State nor its officials acting in their official capacities are persons under [section] 1983." *Id.* at 71.  Moreover, "in the absence of consent[,] a suit in which the State or one of its or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104, 104 S.Ct. 800, 79 L.Ed.2d 93 (1984).  A university funded by the State of Ohio is considered "an arm of the state," and thus, entitled to immunity under the Eleventh Amendment. *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 304 (6th Cir. 1984).

As WSU is a publicly-funded university, and Taylor is an administrator acting in his official capacity, they are not "persons" that may be sued for money damages under 42 U.S.C. § 1983.  As Plaintiffs, in their original Complaint, sought only money damages, Claims One through Four, as pled therein, must be dismissed under Rule 12(b)(1).  Nonetheless, "[a] dismissal under [Rule] 12(b)(1) allows for the possibility of

9

repleading the action to bring it within the subject matter jurisdiction of some court[,]"
*Ohio Nat'l*, 922 F.2d at 325, and Plaintiffs, in their Motion to Amend, Doc. #7, have
sought to leave so replead. Thus, before deciding whether to dismiss Plaintiffs' claims
against WSU and Taylor with prejudice, the Court must first determine whether the
Proposed Amended Complaint, or as to a given claim or claims, could survive a motion
to dismiss under Rule 12(b)(6). *Riverview Health*, 601 F.3d at 512

## B.      Claims One Through Four—Motion to Amend[2]

Plaintiffs move that this Court grant them leave to amend their complaint to "to
include allegations against . . . Taylor in both his official and individual capacities, and to
include a request for declaratory and injunctive relief." Doc. #7, PAGEID #70. Plaintiffs
argue that their amendments cure any deficiencies that were present in Claims One
through Four. Doc. #10, PAGEID #134. However, for the reasons discussed below, the
proposed amended claims fail as matters of law, and Plaintiffs shall not be granted
leave to replead those claims as they are set forth in the Proposed Amended Complaint,
although they will be granted one final opportunity to set forth certain allegations in
Claim One, subject to the requirements set forth herein and the strictures of Rule 11.

### 1.      Taylor in his Individual Capacity

To survive a motion to dismiss, "damages claims against government officials" in
their respective individual capacities "must allege, with particularity, facts that
demonstrate what each defendant did to violate the asserted [C]onstitutional right."

---

[2] All references to Plaintiffs' allegations within section IV.B (pages ten through twenty-six herein) refer to
the Proposed Amended Complaint, Doc. #7-1, rather than the initial Complaint, Doc. #1, unless expressly
stated otherwise.

*Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis added). In the Proposed Amended Complaint, the only well-pleaded factual allegations raised against Taylor as an individual were: (1) he conducted a preliminary conference with Venegas on February 10, 2016, informing him that Esposito had made allegations against him; (2) during that conference, he informed Venegas that he had the right to be represented by counsel at the GBHVP hearing, but discouraged him from seeking counsel; and (3) Taylor scheduled a meeting with Sodini to discuss the allegations that Smith and Esposito had made against Sodini. Doc. #7-1, ¶¶ 28-29, 49, PAGEID #81, 84. The first and third allegations do not permit a logical inference that Taylor engaged in any wrongdoing, much less a violation of Plaintiffs' Constitutional rights.

As to the second allegation, "disciplinary hearings against students and faculty are not criminal trials, and therefore need not take on many of those formalities[,]" *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005), and "[o]rdinarily, colleges and universities need not allow active representation by legal counsel or some other sort of campus advocate." *Id.* at 636 (citing *Jaksa v. Regents of Univ. of Michigan*, 597 F. Supp. 1245, 1252 (E.D. Mich. 1984)). The Court in *Flaim* noted that the law around right to counsel in an expulsion proceeding is unsettled, and held that a right to representation <u>might</u> exist only if: (a) the university is represented by counsel at the hearing; (b) the rules and procedures for the hearing are overly complex; or (c) the student is facing possible criminal charges stemming from the same incident. *Id.* (citations omitted). No reasonable reading of the Proposed Amended Complaint suggests that any of these three circumstances existed at the time of the hearing. Thus, Taylor's alleged statements to Venegas, even if they caused Venegas to refrain

from obtaining counsel, may not form the basis of a due process claim.[3] Further, the right to counsel in an expulsion proceeding was not clearly established at the time of the hearing. Thus, even if one of the above circumstances applied, Taylor would be entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 505 (2009). Plaintiff shall not be granted further leave to raise any individual capacity due process claim against Taylor.

Plaintiffs purport to bring Claim Two, violations of First Amendment free speech and free association rights, against Taylor in his individual capacity. Doc. #7-1, PAGEID #92. In their reply memorandum, Plaintiffs state that the disciplinary hearings against all Team members, including their own, were led by Taylor. Doc. #10, PAGEID #138 nn. 13, 15 (citing Doc. #7-1, ¶¶ 32-33, 54-55, PAGEID #81-82, 85-86). Further, Plaintiffs claim that "by preventing Plaintiffs from discussing the proceedings with fellow teammates and coaches, Defendant Taylor violated the Plaintiffs' First Amendment rights to associate with others who may have been able to help Plaintiffs defend themselves against the serious charges of sexual misconduct." Doc. #10, PAGEID #139 (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)). In the Proposed Amended Complaint itself, Plaintiffs allege that Taylor, in "prohibiting Plaintiffs from speaking with fellow students and witnesses, or from calling members of the coaching staff as witnesses, showed intentional, outrageous, and reckless disregard for Plaintiffs' constitutional rights." Doc. #7-1, ¶ 105, PAGEID #93.

---

[3] Even assuming *arguendo* that other aspects of the disciplinary proceedings against Plaintiffs and their subsequent expulsions constituted a deprivation of due process, those aspects would, at most, form the basis of a section 1983 claim against other WSU employees, not Taylor.

Yet, as discussed above, the only portions of the Proposed Amended Complaint mentioning Taylor's involvement in the proceedings leading to Plaintiffs' expulsions were the initial meetings, in which he informed Venegas and Sodini of the accusations against them. Doc. #7-1, ¶¶ 29, 49, PAGEID #81, 84. Contrary to Plaintiffs' briefing, there is nothing in the Proposed Amended Complaint that would permit the Court to infer that Taylor was involved at all with the disciplinary hearings and decisions to expel Plaintiffs, much less that he led those hearings. Attempts to prohibit Plaintiffs from speaking with witnesses, or to prohibit Plaintiffs from calling certain witnesses, were made by WSU officials other than Taylor. *Id.*, ¶¶ 23-26, 28, 48, 50, PAGEID #80, 81, 84, 85. As the Court may not infer from the Proposed Amended Complaint that Taylor did anything to impede Plaintiffs' First Amendment free speech or free association rights, Plaintiffs shall not be granted leave to raise such a First Amendment claim against him.

Plaintiffs have similarly failed to state viable equal protection claims against Taylor in his individual capacity. Plaintiffs allege that "[d]uring the course of the investigation, hearing, and appeal process," Doc. #7-1, ¶ 118, PAGEID #96, they were treated unfairly vis-à-vis the complainants and other Team members who were accused of similar conduct. *Id.*, ¶¶ 107-22, PAGEID# 94-97. Again, Plaintiffs do not allege that Taylor was involved in the disciplinary process beyond his initial meetings with Venegas and Sodini. Nor do they claim that Taylor was involved with the decisions to remove Plaintiffs from the Team or expel them from WSU. Thus, Plaintiffs' Motion for Leave is overruled to the extent that they seek to bring Claims Three and Four against Taylor in

his individual capacity, and they shall not be granted further leave to bring equal protection claims against him in that individual capacity.

### 2. Taylor in his Official Capacity

#### a. Scope of Permissible Relief

In the Proposed Amended Complaint, Plaintiffs raise Claims One through Four against Taylor in his official capacity, which is "in all respects, other than name, to be treated as a suit against the entity[,]" WSU. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Plaintiffs attempt to get past the above-described Eleventh Amendment bar by seeking only injunctive and declaratory relief as against Taylor in his official capacity. Doc. #7-1, PAGEID #104; *see also Ex Parte Young*, 209 U.S. 123, 155-56, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (lawsuits against a defendant in his official capacity may be allowed if a plaintiff seeks non-monetary damages). The *Ex Parte Young* exception exists "to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 105 (quoting *Ex Parte Young*, 209 U.S. at 160). Thus, Taylor may not be sued in his official capacity for any violation of state law that WSU may have committed. *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005). Further, a plaintiff suing a defendant in his official capacity may only "seek prospective relief to end a continuing violation of federal law." *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2014).

Plaintiffs seek declaratory relief only as to Claim One, alleging that they "are entitled to declaration that the WSU Code of Conduct, as applied to Plaintiffs, violates the Due Process Clause of the Fourteenth Amendment . . . ." Doc. #7-1, ¶ 94, PAGEID

14

#91. As Venegas and Sodini are no longer enrolled at WSU, the Code no longer applies to them, and there can be no continuing violation of their Constitutional rights by WSU. Thus, the Eleventh Amendment bars Plaintiffs' prayer for declaratory relief.

In their prayer for injunctive relief, Plaintiffs seek the "[r]emoval of Plaintiffs' files and records of any and all references to the allegations or investigation at issue, discipline, or sanctions"; and that the Court "[p]rohibit[] any further acts of wrongdoing or retaliation against Plaintiffs[.]"  Doc. #7-1, PAGEID #104.  In their memorandum *contra*, Defendants concede that "the removal of entries from a student record stemming from an allegedly unconstitutional process is prospective in nature and not barred by the Eleventh Amendment."  Doc. #9, PAGEID #115 (citing *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995)).  Nonetheless, they argue that Plaintiffs have failed to state any claim against Taylor in his official capacity for violations of Plaintiffs' First or Fourteenth Amendment rights.  *Id*.

## b.  Proposed Claim One—Procedural Due Process

For Plaintiffs' procedural due process claim to be viable, they must plausibly allege that:  (1) they had a fundamental liberty or property interest; and (2) they were deprived of said interest without sufficient notice or formal opportunity to be heard.  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572-73, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (citations omitted); *see also Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (at the very least, a student facing deprivation of his liberty interest in pursuing an education "must be given some kind of notice and afforded some kind of hearing.").

> [I]n determining the amount of process due, courts are to look at three factors: (1) the nature of the private interest affected—that is, the seriousness of the charge and potential sanctions, (2) the danger of error and the benefit of additional or alternate procedures, and (3) the public or governmental burden were additional procedures mandated.

*Flaim*, 418 F.3d at 635 (citing *Ingraham v. Wright*, 430 U.S. 651, 676-82, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)).

Plaintiffs allege that they both have protected liberty interests in their respective reputations, Doc. #7-1, ¶ 70, PAGEID #88, and their opportunities to pursue their studies at WSU, "as well as future educational and employment opportunities and occupational liberty, which the state cannot deprive them of absent due process." *Id.* ¶ 71. Further, they claim that "Venegas, as an international student, has a protected property interest in his residency status through his student visa, housing, and scholarship[.]" *Id.*, ¶ 72, PAGEID #89. As it is a well-settled principle "that the Due Process Clause is implicated by higher education disciplinary decisions," *Flaim*, 418 F.3d at 633 (citations omitted), Plaintiffs have satisfied the first prong in *Roth*.

Plaintiffs attempt to meet their burden on the second prong by alleging that they: (1) did not receive notice of the allegations against them; (2) were discouraged from retaining counsel; (3) were not allowed to confront or cross-examine the complainants; (4) were not permitted to call witnesses; and (5) were prohibited from attending the hearings of other Team members accused of the same conduct, which rendered them unable to assess whether they were being treated differently than their teammates. Doc. #7-1, ¶¶ 77-81, PAGEID #89-90. Plaintiffs claim that the aforementioned allegations, taken together, constituted an unconstitutional deprivation of their protected interests. *Id.*, ¶¶ 93-96, PAGEID #91.

"[D]ue process is 'not a fixed or rigid concept, but rather, is a flexible standard which varies upon the nature of the interest affected, and the circumstances of the deprivation.'" *Flaim*, 418 F.3d at 634 (quoting *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988)).[4] With respect to notice, the Supreme Court, in *Goss*, held that oral notice of the allegations against a student comported with due process when the student is facing a suspension of ten days or fewer. 419 U.S. at 584. However, the Court also stated that "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id.*

Defendants do not dispute that Plaintiffs' expulsion constituted a serious deprivation of their liberty and property interests. Moreover, the Court may reasonably infer that Plaintiffs were not provided with a formal, written complaint detailing the accusations against them. Nonetheless, the notice that each Plaintiff received was sufficient to satisfy any "more formal procedures," *Goss*, 419 U.S. at 584, which may have been required. Plaintiffs allege that they each had three meetings with WSU officials prior to their formal hearings before the GBHVP. Doc. #7-1, ¶¶ 23, 25, 29, 46, 48-49, 51 PAGEID #80, 81, 84-85. During those meetings, Venegas and Sodini were informed of: (1) the names of the complainants; (2) the alleged misconduct; (3) the fact that the allegations, if true, constituted violations of the Code; (4) their opportunity to contest the allegations before the GBHVP; and (5) their right to have counsel present during the GBHVP hearing (although they were discouraged from exercising said right). *Id.*, ¶¶ 23, 25-29, 46, 48-49, 51 PAGIED #79-80, 84, 85. Additionally, Sodini was

---

[4] *Flaim*, like the instant case, concerned the expulsion of a student from a postsecondary institution, and the expelled student's allegations were similar to those made by Plaintiffs. 418 F.3d at 634 ("Among [plaintiff's] assertions of error are: (A) inadequacy of notice; (B) denial of a right to counsel; [and] (C) denial of a right to cross-examine adverse witnesses").

informed of the four specific Code violations of which he was accused. *Id.*, ¶ 50, PAGEID #85. Finally, these meetings occurred more than one week prior to their respective appearances before the GBHVP, *id.*, ¶¶ 27-28, 49, PAGEID #80-81, 85, which provided each of them "a meaningful opportunity to prepare for the hearing." *Flaim*, 418 F.3d at 638 (citation omitted). Thus, Defendants' pre-hearing procedures satisfied the notice requirement for procedural due process.

Plaintiffs' claims of due process violations with respect to their hearings before the GBHVP are unavailing as pled. Plaintiffs' allegation that they were discouraged from seeking counsel, Doc. #7-1, ¶ 78, PAGEID #89, cannot constitute a due process violation, because, as discussed above, the Proposed Amended Complaint contains none of the exceptions to the general rule that representation by counsel is not necessary to satisfy due process. *Flaim*, 418 F.3d at 636. However, the Court will grant Plaintiffs leave to amend to raise a procedural due process claim against WSU and Taylor in his official capacity on this issue, subject to the strictures of Rule 11.

While Plaintiffs claim they were denied the opportunity to confront and cross-examine the complainants, Doc. #7-1, ¶ 79, PAGEID #89, due process does not require that a student be afforded such an opportunity in an expulsion proceeding. *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 925 (6th Cir. 1988). Unless the hearing's outcome depended upon the relative credibility of the accuser vis-à-vis the accused, due process is satisfied if an accused student had the opportunities to observe the testimony of adverse witnesses and to present his version of the events at issue. *Flaim*, 418 F.3d at 641. As Defendants note, the Proposed Amended Complaint contains no allegations regarding "what evidence or testimony [that] they or anyone else presented

at their hearings[,]" Doc. #9, PAGEID #117, and Plaintiffs allege that "no evidence or testimony was presented to substantiate the charges" against them. Doc. #7-1, ¶¶ 35, 58, PAGEID #82, 85. While Plaintiffs allege that the complainants were present at their hearings, they do not claim that Smith or Esposito testified against Venegas. *Id.*, ¶ 34, PAGEID #82. Further, they claim that, at Sodini's hearing, Smith and Esposito "made clear that Plaintiff Sodini was not present for the primary event in which the poking behavior allegedly took place[,]" *id.*, ¶ 57, PAGEID #85, and do not allege that the complainants made any statements adverse to Sodini. Thus, the GBHVP decisions could not have turned upon Plaintiffs' credibility vis-à-vis Smith or Esposito, and any decision not to allow Plaintiffs to cross-examine the complainants was not a due process violation. As there appears to be no set of facts that could show that Plaintiffs were prejudiced by an inability to cross-examine, they shall not be granted further leave to amend to raise a due process claim on this theory.

Further, Plaintiffs' allegations that they were not permitted to contact or call favorable witnesses, Doc. #7-1, ¶ 80, PAGIED #90, and that they were "forced to defend themselves by asserting relative degrees of culpability without being informed of the all of the evidence heard by the panel in seven consecutive hearings," *id.*, ¶ 81, are insufficient for a viable due process claim. While a student facing expulsion generally has the right to present evidence, "the right to call exculpatory witnesses" is not always necessary to satisfy due process. *Flaim*, 418 F.3d at 636 (citation omitted). Moreover, the Proposed Amended Complaint does not describe how Plaintiffs' alleged inability to call witnesses prevented them from presenting evidence or otherwise fully defend against the allegations. Moreover, Plaintiffs cite to no caselaw supporting their

argument that due process required the GBHVP to inform them of the evidence presented against other Team members. However, subject to the strictures of Rule 11, Plaintiffs will be given one final chance to set forth facts that permit the plausible inference that: (a) they had the due process right to call exculpatory witnesses; and (b) they were prejudiced by not being allowed to do so.

Finally, Plaintiffs' allegation that they "were denied a thorough and impartial investigation and hearing procedure[,]" Doc. #7-1, ¶ 82, PAGEID #90, is conclusory and belied by Sixth Circuit precedent, which holds that the Fourteenth Amendment is not implicated with respect to any pre-hearing investigation. *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 586-87 (6th Cir. 2013); *Doe v. Ohio State Univ.*, No. 2:15-cv-2830, 2016 WL 6581843, at *8 (S.D. Ohio Nov. 7, 2016) (Graham, J.) ("Due process provides, not a guarantee of a perfect investigation, but notice and an opportunity to be heard by a neutral decisionmaker."). Further, "[i]n the university setting, a disciplinary committee is entitled to a presumption of honesty and integrity, absent a showing of actual bias." *McMillan v. Hunt*, No. 91-3843, 968 F.2d 1215 (TABLE), 1992 WL 168827, at *2 (6th Cir. Jul. 21, 1992) (*per curiam*) (citing *Ikpeazu v. Univ. of Neb.*, 775 F.2d 250, 254 (8th Cir. 1985)). To overcome that presumption, Plaintiffs must plausibly allege "personal animosity, illegal prejudice, or a personal or financial stake in the outcome" on the part of WSU officials, *Ikpeazu*, 775 F.2d at 254, and they have failed to do so. However, subject to the strictures of Rule 11, Plaintiffs are granted one final attempt to set forth a plausible claim of animus, prejudice, or impermissible stake in the outcome by WSU officials.

In sum, Plaintiffs were given sufficient notice of the allegations against them by WSU officials, and the hearings before the GBHVP provided meaningful opportunities to defend themselves against those allegations.  Thus, the procedural due process claim, as alleged in the Proposed Amended Complaint, fails as a matter of law, and Plaintiffs shall not be granted leave to file Claim One as set forth therein.  However, they shall be granted leave to file an amended claim, subject to the restrictions described above, within twenty-one days of this Entry.

### c.    Proposed Claim One—Substantive Due Process

Plaintiffs, in attempting to set forth a Substantive Due Process claim as part of its proposed amended Claim One, allege that the actions of WSU officials "were arbitrary and capricious[,]" Doc. #7-1, ¶ 91, PAGEID #91, and their "conduct was so egregious as to shock the conscience." *Id.*, ¶ 92.  Allegations that governmental representatives acted in a way that would "shock the conscience" may form the basis of a substantive due process claim. *Valot v. Se. Local School Dist. Bd. of Educ.*, 107 F. 3d 1220, 1228 (6th Cir. 1992).  However, such a claim reserved for "the most egregious official conduct" that is "so 'brutal' and 'offensive' that it [does not] comport with traditional ideas of fair play and decency." *Cnty. of Sacramento v. Lewis* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (internal quotation marks and citations omitted), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  Plaintiffs do not identify, in the Proposed Amended Complaint or their memorandum *contra*, any actions or inactions by WSU officials that would meet

this high bar. As no substantive due process claim would survive a motion to dismiss, Plaintiffs shall not be granted further leave to amend to include such a claim.

### d.  Proposed Claim Two—First Amendment

In Claim Two of the Proposed Amended Complaint, Plaintiffs allege that WSU officials "sanctioned Plaintiffs for engaging in protected speech and specifically prohibited Plaintiffs from engaging in protected speech, in violation of Plaintiffs' First Amendment rights." Doc. #7-1, ¶ 102, PAGEID #92. Defendants note, and the Court agrees, that Plaintiffs appear to be raising claims of retaliation and prior restraint by WSU officials, in violation of the First Amendment. Doc. #9, PAGEID #121. For a claim of First Amendment retaliation to survive a motion to dismiss, a claimant must plausibly allege that: (1) she engaged in protected conduct; (2) the defendant undertook some adverse action that would deter a reasonable person from engaging or continuing to engage in such protected conduct; and (3) a causal connection between the protected conduct and the adverse action. *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 412 (6th Cir. 2011) (internal quotation marks and citation omitted). Beyond the conclusory allegation discussed above, Plaintiffs fail to allege that they engaged in any protected speech; thus, their First Amendment retaliation claim is not viable.

In considering whether Plaintiffs have set plausibly alleged a First Amendment prior restraint claim, the Court must consider whether: (1) Plaintiffs attempted to engage in speech protected by the First Amendment, but were prevented by a government actor from doing so; (2) such speech was to occur in a public or nonpublic forum; and (3) the government's restraint was reasonable based on the nature of the

speech and the type of forum. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985).

While Plaintiffs allege that WSU officials, prohibited Plaintiffs from speaking with their teammates, coaches or attorneys, Doc. #7-1, ¶¶ 100-02, 105, PAGEID #92. 93, those allegations are contradicted by other allegations in the Proposed Amended Complaint. Aside from the allegations discussed above relating specifically to Taylor, the only alleged attempts to prevent Plaintiffs from speaking were admonitions by WSU officials at the pre-hearing meetings that Venegas could not, and that Sodini should not, discuss the investigation with anyone. Doc. #7-1, ¶¶ 25, 48, PAGEID #80, 84. However, even assuming that, as Plaintiffs' communication with teammates and coaches would have constituted protected speech, *id.*, ¶ 100-02, PAGEID #92, and that WSU officials prevented them from engaging in such speech, Plaintiffs still do not have a viable prior restraint claim, for two reasons. <u>First</u>, the parties do not cite, and the Court is unaware of, any caselaw supporting the proposition that a school official prohibiting a student under investigation from discussing the investigation with employees or other students—the latter of whom may be under investigation themselves—could be considered an unconstitutional prior restraint.

<u>Second</u>, as Defendants note, Doc. #9, PAGEID #123, a District Court recently held that a plaintiff's prior restraint "claim that [the school officials'] instructions prohibiting him from speaking with other witnesses regarding the investigation fails to state a claim upon which relief may be granted." *Sterrett v. Cowan*, 85 F. Supp. 3d 916, 931 (E.D. Mich. 2015), *opinion vacated on other grounds*, No. 2:14-cv-11619, Doc. #90 (E.D. Mich. Sept. 30, 2015). In support, the *Sterrett* Court noted that criminal

defendants—who are entitled to much stronger procedural safeguards than university students facing expulsion—are routinely prohibited from "speak[ing] to . . . other defendants or parties[,]" and that when "a school is dealing with allegations of sexual misconduct, the school's interest in preserving campus safety is strong." *Id.* (citing *Bonnell v. Lorenzo*, 241 F.3d 800, 823 (6th Cir. 2001)).

Plaintiffs do not claim that *Sterrett* is factually distinguishable; nor, from the face of the Proposed Amended Complaint, could they reasonably do so. Six of Plaintiffs' fellow Team members were also subject to disciplinary proceedings before the GBHVP. Further, Plaintiffs do not dispute that WSU officials have a strong interest in preserving campus safety. Finally, they fail to cite—and the Court is unaware of—any caselaw suggesting that a "no contact" order in these circumstances could possibly constitute an unconstitutional restraint of protected speech. For these reasons, Plaintiffs' Proposed Amended Complaint has failed to set forth a viable First Amendment claim, and no such claim could be viable. Accordingly, Plaintiffs' Motion for Leave is overruled as to Claim Two, and Claim Two is dismissed with prejudice.

### e.    Proposed Claims Three and Four—Equal Protection

"To state a claim under the Equal Protection Clause, a [section] 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 322, 341 (6th Cir. 1990). Alternatively, a plaintiff may allege that the government has impinged on a fundamental right, or that the government actor has treated him differently than other similarly situated individuals "without any rational basis for the difference. The latter is

known as a 'class of one' theory." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 986 (6th Cir. 2012) (citations omitted). In Claim Three, Venegas alleges that, while WSU officials expelled Venegas, "at least two other non-protected students charged and found responsible for the same or similar conduct received lesser sanctions[,]" Doc. #7-1, ¶ 111, PAGEID #94, and that WSU officials "treat[ed] Plaintiff Venegas differently than other non-Hispanic and traditional, native students[.]" *Id.*, ¶ 112. Yet, Venegas's co-Plaintiff, Sodini, is a non-Hispanic, native-born U.S. citizen who received the same sanctions as Venegas—removal from the Team and expulsion from WSU. *Id.*, ¶ 61, PAGEID #87. Venegas alleges no further facts that permit the Court to infer that he was subject to disparate treatment based on ethnicity or nationality—the protected classes of which he is a member. *Pursich v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996). Accordingly, Plaintiffs' Motion for Leave is overruled as to Claim Three, and Plaintiffs shall not be granted any leave to amend as to that claim

In Claim Four, Venegas <u>and</u> Sodini allege that "[d]uring the course of the investigation, hearing, and appeal process, multiple members of the student body and tennis team advised Defendants that Plaintiffs were victims of the same sexual misconduct (and in Plaintiff Venegas' case, racial harassment) that had been alleged by the [complainants,]" and that "the complainants themselves perpetrated the same type of sexual misconduct" of which Plaintiffs were accused. Doc. #7-1, ¶ 118, PAGEID #96. Yet, "[d]espite the repeated, consistent reports that Plaintiffs were victims themselves, Defendants did nothing to investigate, prosecute, or discipline the complainants for the alleged misconduct." *Id.*, ¶ 119.

Apart from Venegas's allegations in Claim Three, Plaintiffs do not allege that they are members of a protected class. Nor do they allege that Defendants intentionally discriminated against them on the basis of membership in any other protected class. Further, education is not a fundamental right subject to an equal protection claim. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 37, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Finally, Plaintiffs do not have a viable "class of one" claim. As the complainants were also WSU students and Team members, Doc. #7-1, ¶ 117, PAGEID #95, Smith and Esposito appear to be similarly situated in all relevant respects to the Plaintiffs. Moreover, the Court must accept as true Plaintiffs allegations that they informed WSU officials that the complainants, Smith and Esposito, had engaged in the same misconduct of which Plaintiffs were accused, yet the officials refused to subject the complainants to disciplinary proceedings. *Id.*, ¶¶ 118-19, PAGEID #96. Thus, the Court, at this stage, may reasonably infer that Defendants lacked any rational basis for their alleged disparate treatment.

Nonetheless, "[a]t least six other hearings involving nine of the ten members of the WSU Men's Varsity Tennis Team were held separately and consecutively on the same day, in front of the same GBHVP panel members. Each hearing involved the same global allegations by the two complainants[.]" *Id.*, ¶ 54, PAGEID #85. Thus. Plaintiffs have not plausibly alleged, in the original Complaint or Proposed Amended Complaint, that they were treated differently from <u>all</u> similarly situated comparators; nor could they reasonably do so. As, Plaintiffs do not have a viable equal protection claim under any theory, their Motion for Leave is overruled as to Claim Four, and they shall not be granted further leave to amend.

C.  **Claim Five—Violations of Title IX**

As Defendants do not contend that the Court lacks subject matter jurisdiction to hear Plaintiffs' Title IX claim, the Court presumes that Defendants' Motion to Dismiss as to Claim Five arises under Rule 12(b)(6).  Except as discussed in subsection two, Plaintiffs raise identical allegations as to Claim Five in both the original Complaint and Proposed Amended Complaint.  Doc. #1, ¶¶ 103-12, PAGEID #20-21; Doc. #7-1, ¶¶ 123-33, PAGEID #97-98. Thus, the Court's evaluation of Defendants' Motion to Dismiss and Plaintiffs' Motion for Leave is identical as to subsections one, three, four and five: whether they have stated a plausible claim for relief under Title IX.

1.  **Facial Challenge**

In Claim Five, Plaintiffs set forth conclusory allegations that they "did not receive the required due process and equal protection Title IX requires[,]" Doc. #1, ¶ 106, PAGEID #20; Doc. #7-1, ¶ 127, PAGEID #97, and that "Defendants committed impermissible gender bias against Plaintiffs in the investigation and adjudication of the accusations against them." *Id.*, ¶ 110;  Doc. #7-1, ¶ 131, PAGIED #98.  However, the Code section concerning Gender-Based Harassment and Violence states that "[a]ll members of the campus community are expected to conduct themselves in a manner that does not infringe upon the rights of others."  Doc. #1-3, PAGEID #32.[5]  Plaintiffs fail to identify any procedure or practice that treats male students accused of sexual

---

[5] Plaintiffs submitted the above Code section as an exhibit to the original Complaint, and the portion of the Code on Gender-Based Harassment and Violence is essential to their claims.  Thus, the Court may properly consider the Code section "without converting the motion to dismiss into a motion for summary judgment." *Thomas v. Noder-Love*, No. 13-2495, 621 F. App'x 825, 828 (6th Cir. 2015) (citing *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).

misconduct differently than female students. Finally, as stated above, WSU did not deprive Plaintiffs of their due process and equal protection rights. Thus, any argument that WSU procedures were facially discriminatory on the basis of sex is unavailing, and Claim Five may not proceed under such a theory.[6]

### 2. Sex Discrimination

As discussed above, Plaintiffs allege that they notified WSU officials that Smith and Esposito had perpetrated sexual misconduct against them, but that the officials' intentionally decided not to investigate Plaintiffs' complaints. Plaintiffs claim that the officials' failure to investigate was motivated by sex-based discrimination and deprived Plaintiffs of the due process that is to be afforded any student who complains of sexual misconduct, in violation of Title IX. Doc. #1, ¶ 111, PAGEID #21.

In an unpublished opinion, the Sixth Circuit, in accordance with the First and Seventh Circuits, applied the "burden-shifting" approach used in cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 *et seq.*, to claims of direct discrimination or disparate treatment brought under Title IX. *Ivan v. Kent State Univ.*, No. 94-4090, 92 F.3d 1185 (TABLE), 1996 WL 422496, at *2 (6th Cir. Jul. 26, 1996) (*per curiam*) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). At the first step of the *McDonnell Douglas* analysis, Plaintiffs must plead facts sufficient to show they were: (1) members of a protected class; (2) subjected to adverse treatment by an educational institution funded by the federal government; (3) denied access to opportunities at the institution for which they

---

[6] For subsections one, three, four and five, any decision by the Court as to whether Claim Five is viable under a certain theory applies equally as to the original Complaint and Proposed Amended Complaint.

were otherwise qualified; and (4) a comparable person who is not a member of Plaintiffs' protected class received more favorable treatment. *Id.* at n.9 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)).

"With respect to the last requirement, to demonstrate that he was treated differently than a similarly situated person of the opposite [sex], [plaintiff] must demonstrate that 'all relevant aspects' of his situation are 'nearly identical' to those of the allegedly similarly situated person." *Doe v. Ohio St. Univ.*, No. 2:16-cv-171, --- F. Supp. 3d ----, 2017 WL 951464, at * 11 (S.D. Ohio Mar. 10, 2017) (Smith, J.) (emphasis added) (quoting *Humenny v. Genex Corp.*, 390 F. 3d 901, 906 (6th Cir. 2004)). In the initial Complaint, Plaintiffs failed to allege how, as males, they could be considered part of a protected class in a sex-discrimination claim. Nor did Plaintiffs allege the existence of a female comparator who received more favorable treatment from WSU officials. Accordingly, Claim Five, as pled in the initial Complaint, is not viable.

In the Proposed Amended Complaint, Plaintiffs add allegations that WSU, in accordance with an April 11, 2011, directive from the U.S. Department of Education Office of Civil Rights ("OCR") regarding sexual misconduct investigations at the university, began "to apply the preponderance of evidence standard in sexual assault proceedings, despite the potentially substantial financial and emotional impact that a violation could have on alleged perpetrators of sexual assault." Doc. #7-1, ¶¶ 3-4, PAGEID #77. WSU did so, Plaintiffs claim, to counter the "public scrutiny" that WSU had faced "in recent years for not properly addressing a rape culture on campus." *Id.*, ¶ 6. Plaintiffs claim that, "[i]n doing so, WSU has focused substantially on victim protection and swift sanctioning of alleged perpetrators, which has had the effect of

denying alleged perpetrators, like the Plaintiffs, fairness in the Code of Conduct proceedings." *Id.*, ¶ 8, PAGEID #78. Plaintiffs allege that they were denied the "impartial due process" to which they were entitled under Title IX, *id.*, ¶ 129, PAGEID #98, and committed "impermissible [sex] bias against Plaintiffs in the investigation and adjudication of the accusations against them." *Id.*, ¶ 131.

Plaintiffs' claims are similar to those in *Doe v. Columbia Univ.*, in which the Second Circuit reversed the District Court's dismissal of a Title IX sex discrimination claim, concluding that the plaintiff's specific allegations, taken as a whole, reasonably supported his claim of sex bias, in that:

> [H]aving been severely criticized . . . for toleration of sexual assault of female students, Columbia was motivated in this instance to accept the female's accusation of sexual assault and reject the male's claim of consent, so as to show the student body and the public that the University is serious about protecting female students from sexual assault by male students—especially varsity athletes.

831 F.3d 46, 57-58 (2d Cir. 2016). However, the *Columbia* holding specifically addressed disparate treatment of male and female students within the context of alleged opposite-sex sexual misconduct, and cannot reasonably be extended to the facts in this case. Defendants note that "[t]here are no allegations . . . about a culture of male-on-male sexual touching or hazing at [WSU,]" Doc. #9, PAGEID #128, and Plaintiffs concede that "[t]he OCR directive instructed that universities take several measures to protect alleged victims (most often women) in campus sexual assault proceedings." Doc. #7-1, ¶ 4, PAGEID #77 (emphasis added). Thus, even if WSU, motivated by the OCR directive and negative public perception, denied fair hearings to students accused of sexual misconduct, Doc. #7-1, ¶ 8, PAGEID #78, that denial would

not have resulted in sex-based discrimination as against Plaintiffs since, unlike in *Columbia*, the alleged victims were male.

Finally, in the Proposed Amended Complaint, Plaintiffs fail to identify a female comparator, and in their briefing, they fail to cite any case that would allow them to use male students as comparators for a Title IX claim. As Plaintiffs have failed to state a plausible claim of direct discrimination or disparate treatment in the original Complaint or Proposed Amended Complaint, Claim Five may not proceed on such a theory, and Plaintiffs will not be granted further leave to attempt to set forth a Title IX claim based on sex discrimination.

### 3. Deliberate Indifference

In *Vance v. Spencer Cty. Pub. Sch. Dist.*, the Sixth Circuit set forth the circumstances under which an educational institution could be held liable for being "deliberately indifferent" to allegations of student-to-student harassment, in violation of Title IX. 231 F.3d 253 (6th Cir. 2000). Specifically, Plaintiffs would have to plausibly allege that:

> (1) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school; (2) the funding recipient had actual knowledge of the sexual harassment; and (3) the funding recipient was deliberately indifferent to the harassment.

*Id.* at 258-59 (6th Cir. 2000) (citations omitted). Plaintiffs may prove deliberate indifference "only where the [party's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 260 (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

"[T]here is no reason why courts, on a motion to dismiss, . . . could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649.

Plaintiffs' only allegation in the Proposed Amended Complaint to support a deliberate indifference claim is that "Defendants were put on notice that Plaintiffs were, or may have been, victims of sexual misconduct but failed to investigate [Plaintiffs' allegations]." Doc. #7-1, ¶ 130, PAGEID #98. Any failure by WSU to investigate Plaintiffs' specific allegations of sexual misconduct is not sufficient to sustain a deliberate indifference claim. Rather, the Proposed Amended Complaint shows that WSU conducted investigations and disciplinary proceedings regarding a majority of the sexual misconduct and hazing allegations. *See, e.g.*, *id.*, ¶ 54, PAGEID #85 ("[a]t least six other hearings involving nine of the ten members of the WSU Men's Varsity Tennis Team were held separately and consecutively on the same day, in front of the same GBHVP panel members."). That WSU chose not to investigate every related allegation cannot be considered "clearly unreasonable," even at the motion to dismiss stage, and Plaintiffs cannot proceed with Claim Five on a deliberate indifference theory.

### 4.    **Erroneous Outcome**

Plaintiffs allege that the decisions finding them responsible for Code violations, removing them from the Team and expelling them from WSU led to an "erroneous outcome that was the direct result of a flawed and biased procedure." Doc. #7-1, ¶ 132, PAGEID #98. Erroneous outcome claims are reserved for instances in which an educational institutions "disciplinary procedures governing sexual assault claims [are] discriminatorily applied or motivated by a chauvinistic view of the sexes." *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009) (internal quotation marks and

citations omitted).  "Plaintiffs who claim that an erroneous outcome was reached must allege particular facts to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding."  *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).  It is not enough for Plaintiffs to allege merely that the hearing procedures were unfair and that they suffered adverse outcomes.  Rather, to survive a motion to dismiss, Plaintiffs' Proposed Amended Complaint must contain "a particularized allegation relating to a causal connection between the flawed outcome and [sex] bias."  *Id.*; *accord: Mallory v. Ohio Univ.*, No. 01-4111, 76 F. App'x 634, 639-40 (6th Cir. 2003) (applying *Yusuf* and upholding summary judgment on an erroneous outcome claim because the plaintiff had not shown causal connection between sex-based animus and his expulsion).

Plaintiffs have not met the above burden, for two reasons.  <u>First</u>, as Defendants note, Plaintiffs have failed to allege any statements or actions by WSU officials that would demonstrate bias against Plaintiffs based on their sex.  Doc. #5, PAGEID #61.  Nor do they allege "that the disposition of those other student conduct cases" involving Team members "demonstrates a pattern of [sex]-biased decision making."  *Id.*, PAGEID #62.  <u>Second</u>, unlike in other cases where Courts have allowed erroneous outcome claims to proceed, *Yusuf*, 35 F.3d at 715, Plaintiffs have raised nothing more than conclusory allegations of sex-based animus on the part of WSU officials.  Such an allegation is particularly insufficient in this case, where both Plaintiffs and the complainants are male.  Thus, Claim Five may not proceed under an erroneous outcome theory.

### 5.      Selective Enforcement

Finally, Plaintiffs allege that sex "was a motivating factor behind the sanctions imposed upon Plaintiffs by Defendants[,]" Doc. #7-1, ¶ 128, PAGEID #98, *i.e.*, the Code was "selectively enforced" against them, in violation of Title IX. However, such claims require plausible allegations "that a female was in circumstances sufficiently similar to [those of Plaintiffs] and was treated more favorably by the University." *Mallory*, 76 F. App'x at 641 (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994), *abrogated on other grounds as recognized in Carter v. Toyota Tsusho Am., Inc.*, No. 12-5384, 529 F. App'x 601, 610 (6th Cir. 2013); *Curto v. Smith*, 248 F. Supp. 2d 132, 146-47 (N.D.N.Y. 2003)). Plaintiffs do not allege that the any female students accused of similar sexual misconduct received less severe sanctions than did Plaintiffs. Nor do Plaintiffs claim that they were assessed more severe sanctions because they were accused of assaulting male, rather than female, students. In the absence of any sex-based disparities in sanctions, a selective enforcement claim may not proceed.

In sum, neither the original Complaint nor the Proposed Amended Complaint fails to set forth a plausible Title IX claim under any permissible theory. Further, there is no caselaw, statute, or regulation suggesting that a Title IX claim could be viable arising out of allegations of same sex harassment. Accordingly, as to Claim Five, Defendants' Motion to Dismiss is sustained, Plaintiffs' Motion for Leave is overruled, and Plaintiffs shall not be granted further leave to amend.

### D.      Further Leave to Amend

In overruling Plaintiffs' Motion for Leave, this Court evaluated their Proposed Amended Complaint; in so doing, the Court *de facto* granted Plaintiffs a second chance

to set forth plausible claims. Their inability to do so—and, as discussed above, the extent to which their claims fall short of satisfying *Iqbal* and *Twombly*—lead the Court to conclude that further leave to amend is futile as to Claims Two through Five in their entireties, and Claim One as to any alleged substantive due process violation. Accordingly, Plaintiffs shall only be granted leave to amend as to the procedural due process violations alleged Claim One as to the following subsections:

1. Taylor allegedly discouraging Venegas from seeking counsel;
2. That they had a right to call exculpatory witnesses, and were prejudiced by being prevented from doing so; and
3. The hearing was tainted by animus, prejudice, or impermissible stake in the outcome on the part of WSU officials.

Any such claim may only be raised against Taylor in his official capacity. Further, Plaintiffs may only seek the injunctive relief that is not otherwise barred by the Eleventh Amendment.


### E. Claim Six—Breach of Contract

For the reasons discussed above, the Court has dismissed all claims that arise under federal law. Further, with the exception of a subsection of Claim One, all federal claims are dismissed with prejudice. Thus, only Claim Six, a breach of contract claim arising under Ohio law, is currently pending before this Court. This Court, under 28 U.S.C. § 1367, has supplemental jurisdiction over that claim. However, supplemental jurisdiction is a "doctrine of discretion" that must be exercised narrowly. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, . . . the state claims

should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The Court does not know whether Plaintiffs will choose to file an amended Claim One, or whether such an amended claim would survive a motion to dismiss. As this lawsuit is not one of the rare cases where "the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues[,]" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (internal quotation marks and citation omitted), the Court declines to exercise its supplemental jurisdiction at this point. Accordingly, the Court overrules Defendants' Motion to Dismiss as to Plaintiffs' Claim Six, subject to renewal if Plaintiffs file an amended Claim One. If Plaintiffs choose not to file an amended, albeit limited, Claim One, then Claim Six will be dismissed without prejudice to refiling in a state court of competent jurisdiction. Similarly, if Plaintiffs do choose to file amended Claim One, but such claim does not survive a motion to dismiss, then this Court will dismiss Claim Six without prejudice to refiling in a state court of competent jurisdiction

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, Doc. #5, is SUSTAINED IN PART AND OVERRULED IN PART, and Plaintiffs' Motion for Leave to Amend, Doc. #7, is OVERRULED. Claims Two through Five are DISMISSED WITH PREJUDICE, and Claim One is DISMISSED WITHOUT PREJUDICE. Plaintiffs may file an amended Claim One within twenty-one days of this entry, subject to the restrictions described above and to the requirements of Rule 11. Claim Six remains pending. If

Plaintiffs choose to file an amended Claim One, then Defendants may renew their motion to dismiss Claim Six. If no amended Claim One is filed, or if the amended Claim One cannot survive a renewed motion to dismiss, then the Court will dismiss Claim Six without prejudice to refiling in a state court of competent jurisdiction. Judgment shall ultimately enter in favor of Defendants and against Plaintiffs on Claims Two through Five.


Dated: August 21, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE